IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LEE ROY HERNANDEZ, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:21-CV-0108-D |
| VS. § | |
| § | |
| GROENDYKE TRANSPORT, INC., § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from a collision between two trucks defendant Groendyke Transport, Inc. ("Groendyke") moves for summary judgment, and plaintiff Lee Roy Hernandez ("Hernandez") moves to exclude the testimony of three of Groendyke's expert witnesses. Hernandez opposes Groendyke's motion for summary judgment in part, and Groendyke opposes Hernandez's motions to exclude. For the reasons that follow, the court grants in part and denies in part Groendyke's motion for summary judgment, and it denies Hernandez's motions to strike, except to the extent it limits the scope of the testimony of two of Groendyke's expert witnesses.

I

On May 30, 2018 Hernandez was parked in the overnight parking section of a Love's Truck Stop.[1] Ryan Wells ("Wells"), a driver employed by Groendyke, was backing his

---

[1]The court recounts the evidence in the light most favorable to Hernandez, as the summary judgment nonmovant, and draws all reasonable inferences in his favor. *See Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

tractor-trailer into a parking spot at the truck stop and his mud flap hanger hit the bumper of Hernandez's truck. The collision caused Hernandez to fall to the floor of the truck and injure his back.

Hernandez filed this lawsuit in state court on May 13, 2020, alleging claims for gross negligence, negligence based on Wells's actions in the scope of his employment for Groendyke, and negligence based, *inter alia*, on Groendyke's negligent hiring, training and supervision, and maintenance. Groendyke timely removed the case based on diversity of citizenship. On February 17, 2022 the court granted the parties' agreed motion to extend scheduling deadlines and extended the deadline for nondispositive and dispositive motions to May 19, 2022. The court advised the parties that, if a motion was filed so close to this deadline that it could not be briefed and decided before the June 6, 2022 trial setting, it may be necessary to continue the trial.

Groendyke moves for summary judgment contending, *inter alia*, that it is entitled to summary judgment because Hernandez failed to timely file his pretrial disclosures and failed to designate expert witnesses regarding causation. Hernandez opposes the motion in part but agrees to withdraw his claims that Groendyke was independently negligent and for gross negligence. Hernandez moves to exclude or, alternatively, limit the testimony of three of Groendyke's designated expert witness: Adam Van Cleave ("Van Cleave"), Vishal C. Patel, M.D. ("Dr. Patel"), and Heather M. Linn, M.D. ("Dr. Linn"). Groendyke opposes these motions. The court is deciding the motions on the briefs.

II

The court first addresses Groendyke's motion for summary judgment.

A

Groendyke moves for summary judgment on claims for which Hernandez will bear the burden of proof at trial.

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet its burden. *Little*, 37 F.3d at 1076.

B

The court turns first to Hernandez's claims for negligence directly against Groendyke and gross negligence. Because Hernandez does not oppose Groendyke's motion for

summary judgment in this respect and agrees to withdraw these claims, the court grants Groendyke's motion for summary judgment and dismisses Hernandez's claims for negligence directly against Groendyke and gross negligence.

C

The court now considers Groendyke's contention that it is entitled to summary judgment dismissing Hernandez's negligence claim based on Wells's alleged negligence in the scope of his employment.

Groendyke contends that, because Hernandez's pretrial disclosures were untimely, he is precluded from relying on this evidence to oppose Groendyke's motion for summary judgment and from presenting this evidence at trial. Hernandez responds that his disclosure was untimely due to mistake and is harmless because, *inter alia*, the court vacated the June trial setting on the basis that the parties' motions were filed so close to the trial setting that they could not be briefed and decided prior to trial.

Unless the court orders otherwise (which it did not in this case), Fed. R. Civ. P. 26(a)(3) requires that parties disclose information about their trial witnesses, applicable deposition excerpts, and trial exhibits at least 30 days before trial. In this case, the original trial setting was for the two-week docket of June 6, 2022, so the parties' Rule 26 pretrial disclosures were due on May 6, 2022. Hernandez did not file his pretrial disclosures until six days later, on May 12, 2022.

Because Hernandez's disclosures were untimely, he is "not allowed to use that information or witness[es] to supply evidence on a motion, at a hearing, or at a trial, unless

the failure was substantially justified or is harmless." Rule 37(c)(1). "Rule 37(c)(1) . . . does not require witness preclusion for untimely disclosure if missing the deadline is harmless." *Nguyen v. Versacom, LLC*, 2016 WL 7426126, at *5 (N.D. Tex. Dec. 23, 2016) (Fitzwater, J.) (quoting *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 196 (4th Cir. 2003)). "The district court has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless." *Id.* (quoting *Sea Side Villas II Horizontal Prop. Regime v. Single Source Roofing Corp.*, 64 Fed. Appx. 367, 372 (4th Cir. 2003)).

> In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.

*Hoffman v. L&M Arts*, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (Fitzwater, C.J.) (quoting *Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *11 (N.D. Tex. June 30, 2004) (Fitzwater, J.)); *accord, e.g.*, *Viera v. Signature Contracting Servs., LLC*, 2014 WL 2893208, at *1 (N.D. Tex. June 26, 2014) (Horan, J.). "The court considers the four-factor test holistically. 'It does not mechanically count the number of factors that favor each side.'" *Hoffman v. L&M Arts*, 2012 WL 4321739, at *4 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.) (quoting *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012)).

Considering the four-factor test for harmlessness holistically, the court holds that Hernandez's untimely filing of his pretrial disclosures was harmless. This is especially so

given that the court previously vacated the June 6, 2022 trial setting and has not yet set this case for a new trial date.[2]  The court therefore holds that Groendyke is not entitled to summary judgment based on Hernandez's failure to timely file his pretrial disclosures.

D

Groendyke finally argues that it is entitled to summary judgment because Hernandez failed to retain expert witnesses to testify regarding causation and he therefore cannot prove that the accident caused his injuries.  Hernandez responds that, although he has not retained expert witnesses to testify regarding the cause of his injuries, he intends to call his non-retained treating physicians as expert witnesses and to produce lay testimony regarding causation.

Under Texas law, "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007).  But lay testimony may be sufficient to establish causation, if there is a "strong, logically traceable connection between the event and the condition . . . ." *Id*. at 667.  To make the determination of whether expert testimony is necessary, courts examine whether lay testimony can establish causation

> between the automobile accident and basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the

---

[2]On May 10, 2022 the court set the trial to begin on June 27, 2022.  In a May 16, 2022 order, the court stated that it would reset the trial, if necessary, after it decided the instant summary judgment motion.

>    common knowledge and experience of laypersons, caused by
>    automobile accidents.

*Id.*

It is undisputed that Hernandez experienced back injuries prior to the accident in question.[3] The court concludes, however, that lay testimony is sufficient to establish causation between the accident and the back pain that Hernandez suffered shortly after the accident and the medical care he received for that pain, such as his visits to an urgent care facility and a chiropractor the week after the accident. *See Cruzata v. Wal-Mart Stores Tex., LLC*, 2015 WL 1980719, at *5-6 (W.D. Tex. May 1, 2015) (denying motion to reconsider denial of summary judgment because plaintiff submitted lay evidence that he suffered back injuries contemporaneous with his accident, and "he was not required to submit expert testimony on causation in response to evidence of preexisting conditions"); *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 849-50 (Tex. App. 2013, no pet.) (concluding that the jury could causally connect car accident to plaintiffs' immediate head and neck pain and medical treatment for that pain without expert testimony); *Devoti v. Delaney*, 2012 WL 3677050, at *4 (Tex. App. Aug. 28, 2012, no pet.) (mem. op.) ("The back and leg pain [plaintiff] suffered very shortly after the accident can be within the experience and knowledge of laypersons as being caused by car accidents." (quotation omitted)).

With respect to Hernandez's injuries and treatments that occurred months or even more than one year after the accident—such as his spinal surgery—the court concludes that

---

[3]Hernandez testified in his deposition that his injuries are entirely attributable to the accident at issue in the instant case, not to his previous injuries.

expert testimony *is* required to establish causation. *See Allee v. Medina-Vega*, 2018 WL 4103224, at *3 (S.D. Tex. June 5, 2018) (holding that treatments, including surgery, performed a year after automobile accident required expert testimony to establish causation, but denying defendant's motion for summary judgment because plaintiff designated her treating physicians as non-retained expert witnesses).

Hernandez maintains that, although he has not retained expert witnesses to provide their opinions regarding causation, he intends to call his non-retained treating physicians to provide expert testimony regarding causation. Because Hernandez posits that he intends to provide such expert testimony regarding causation, the court denies Groendyke's motion for summary judgment with respect to Hernandez's negligence claim.

### III

The court turns next to Hernandez's three motions to exclude, or, alternatively, limit the testimony of three of Groendyke's expert witnesses: Van Cleave, Dr. Patel, and Dr. Linn.

### A

The court decides these motions in its role as gatekeeper concerning the admissibility of expert testimony. *See, e.g.*, *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("Rule 702 charges trial courts to act as 'gate-keepers . . . .'"). "[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.* at 250.

The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to

the suit, and (3) the evidence is reliable. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999).

First, an expert must be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

Second, to be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone*, 288 F.3d at 245 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593).

Third, "[r]eliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-93). The testimony must constitute "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See id.* at 592 n.10. The court's inquiry is flexible in

that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

B

The court first considers Hernandez's motion to exclude Van Cleave's testimony.

1

Hernandez challenges Van Cleave's expert testimony on two grounds: (1) Van Cleave is not qualified to provide opinions on the causation of Hernandez's injuries, and (2) Van Cleave's testimony is unreliable because it lacks a sufficient factual and evidentiary basis. Groendyke responds, *inter alia*, that Van Cleave's degree in mechanical engineering and experience with respect to biomechanics and accident reconstruction qualify him to offer an opinion regarding the forces at work during the accident and whether those forces are generally consistent with causing certain types of injuries. Groendyke also maintains that Van Cleave's opinions are based on reliable methodologies and practices.

2

The court concludes that Van Cleave is qualified to offer expert testimony. Van

Cleave holds a master's degree in mechanical engineering, is an Accredited Accident Reconstructionist, and has performed over 300 vehicle accident reconstructions. Courts of this circuit have held that experts with similar qualifications are qualified to testify as to the forces generated by events or accidents and the probable effect of such forces on the human body. *See, e.g.*, *Vazquez v. Aguilera*, 2022 WL 2292888, at *5 (S.D. Tex. Mar. 25, 2022) ("As many federal courts have recognized, 'biomechanical engineers and mechanical engineers are qualified to testify about the forces generated by accidents and the probable effects of such forces on the human body[.]'" (alteration in original) (quoting *Herrera v. Werner Enters., Inc.*, 2015 WL 12670443, at *3 (W.D. Tex. Sept. 28, 2015))); *see also Ramirez v. Escajeda*, 2021 WL 1131721, at *10-12 (W.D. Tex. Mar. 24, 2021) (holding that biomechanical engineer was qualified to testify as to the forces generated in a particular event and the general types of injuries those forces may cause, but that she could not offer opinions on the precise cause of a specific injury). The court therefore holds that Van Cleave is qualified to offer expert testimony as to the forces generated by the accident and the probable effects of such forces on the human body, but that he cannot testify as to whether the accident did in fact cause Hernandez's specific injuries.

The court also concludes that Van Cleave's testimony is reliable. Hernandez makes the conclusory assertion that Van Cleave's methodology is unreliable. But Hernandez's only specific argument to support this assertion is that Van Cleave is unreliable because he discusses the injuries the forces generated by the accident would probably create, but avers that he is not offering a medical opinion or an opinion as to the cause of Hernandez's specific

- 11 -

injuries. But as the court has explained, that is the proper scope of Van Cleave's testimony, and is not a reason to exclude his opinion as unreliable. Moreover, the methodologies that Van Cleave employed—such as his review of photographs of the trucks and accident site, his review of Hernandez's medical records, and his simulated bending test of an exemplar truck bumper—are all sufficiently reliable methodologies. *See Herrera*, 2015 WL 12670443, at *4 (holding that methods such as reviewing photographs and police report from accident, examining reports from nearly identical accidents, and a lane-merge analysis were reliable); *Reynoso v. Ford Motor Co.*, 2005 WL 5994183, at *3 (S.D. Tex. Sept. 27, 2005) (holding that mechanical engineer's methods, including, *inter alia*, simulation of accident and review of publications, photographs of the accident scene, and medical records were reliable).

The court therefore denies Hernandez's motion to exclude Van Cleave's testimony, but it also limits the scope of his testimony to only the forces generated by the accident and the probable effects of such forces on the human body.

C

The court next considers Hernandez's motion to exclude Dr. Patel's testimony.

1

Hernandez challenges Dr. Patel's expert testimony on two grounds: (1) Dr. Patel is not qualified to provide opinions on the causation of Hernandez's injuries and whether the amounts charged for his medical services were reasonable and necessary, and (2) Dr. Patel's opinions are unreliable because, *inter alia*, he did not personally examine Hernandez, has no understanding of how the collision occurred, has not reviewed Hernandez's 2005 MRI, and

did not author his counter-affidavit. Groendyke responds that Dr. Patel is qualified to opine regarding the cause of Hernandez's injuries and the reasonableness of Hernandez's medical bills because he is a board certified orthopaedic surgeon who performs and bills for procedures and services similar to those Hernandez received. Groendyke also posits that Dr. Patel's opinion is reliable and that the use of a template affidavit does not render his opinion unreliable.

2

The court disagrees with Hernandez's assertion that Dr. Patel is not qualified to offer an opinion regarding the reasonableness and necessity of Hernandez's medical bills. Dr. Patel avers that he performs the same services and procedures that Hernandez receives and, as a part of his medical practice, he routinely must determine the reasonable charge for such services. These facts qualify Dr. Patel to testify as to the reasonableness of Hernandez's medical bills with respect to the services that Dr. Patel performs and bills. *See Galvez v. KLLM Transp. Servs., LLC*, ___ F.Supp.3d ____, 2021 WL 5964629, at *7 (N.D. Tex. Dec. 16, 2021) (Fitzwater, J.) (holding that physician was qualified to testify regarding whether the medical charges were reasonable and necessary for a procedure that he performed); *Villanueva Carreon v. Gonzales Gamez*, 2021 WL 3604843, at *5 (S.D. Tex. Mar. 24, 2021) (holding that physician was qualified to discuss the reasonableness of charges from other medical professionals). Moreover, Dr. Patel, as a board-certified orthopaedic surgeon specializing in surgery of the spine, is qualified to testify regarding whether Hernandez's back injuries were caused by the accident in question. *See Grant v. CRST Expedited, Inc.*,

2021 WL 1151560, at *9 (E.D. Tex. Jan. 28, 2021) (holding that orthopaedic surgeon was qualified to testify as to the medical causation of plaintiff's alleged injuries)

The court also concludes that the methodology on which Dr. Patel relies to support his opinion regarding the cause of Hernandez's injuries is reliable. Dr. Patel reviewed Hernandez's medical history, post-collision medical records, and diagnostic imaging before formulating his opinions. Other courts have found a review of medical records to be a reliable method for determining the cause of a person's injuries and the necessity of medical treatment, even if the physician did not examine the patient in person. *See, e.g.*, *id.* at *10 (holding that physician's methodology was reliable despite not examining the plaintiff in person because he reviewed medical history, post-collision medical reports, and diagnostic imaging); *Vazquez v. Aguilera*, 2022 WL 2292888, at *8-9 (S.D. Tex. Mar. 25, 2022) (rejecting argument that physician was required to examine patient in person and holding that physician could provide reliable opinion by examining medical records and imaging studies). Additionally, although Hernandez asserts that Dr. Patel did not review his 2005 MRI, Dr. Patel testified that he reviewed a report from a radiologist comparing Hernandez's 2005 MRI to his 2018 MRI. This argument therefore goes to the bases and sources of Dr. Patel's opinion and relates to the weight and credibility that the jury should assign his testimony, not its admissibility. *See, e.g.*, *Viterbo*, 826 F.2d at 422.

The court also rejects Hernandez's contention that Dr. Patel's opinion should be excluded as unreliable because he did not author his counter-affidavit regarding the reasonableness of Hernandez's medical bills. The record reflects that Dr. Patel reviewed the

billing data and prepared the counter-affidavit but relied on a third-party corporation, MedCost Contain, during his preparation of the affidavit. Hernandez cites no case law to support his argument that Dr. Patel's testimony should be excluded as unreliable simply because he relied on a third-party company during the preparation of an affidavit. And the court concludes that such an argument goes to the bases and sources of Dr. Patel's testimony, not its admissibility.[4] Thus although Hernandez can raise this issue during cross examination, *see Daubert*, 509 U.S. at 596, the court denies his motion to exclude Dr. Patel's testimony.

---

[4]In the context of disclosures of expert witnesses, Rule 26(a)(2)(B) requires that expert disclosures "must be accompanied by a written report—prepared and signed by the witness . . . ." "Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Seitz v. Envirotech Sys. Worldwide Inc.*, 2008 WL 656513, at *2 (S.D. Tex. Mar. 6, 2008) (quotation omitted). The court concludes, however, that Rule 26 does not require exclusion of Dr. Patel's opinion because Hernandez does not challenge the sufficiency of the affidavit as an expert report. Hernandez does not rely on Rule 26 in his motion, and he does not argue that Dr. Patel failed to provide a sufficient expert report; instead, he contends only that Dr. Patel's testimony is unreliable under *Daubert*. Moreover, even assuming *arguendo* that Rule 26 was applicable to Hernandez's challenge to Dr. Patel's counter-affidavit, Hernandez has not met his burden of demonstrating that the counter-affidavit was entirely prepared by another party and that Dr. Patel was merely acting as a mouthpiece. *See Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, 2018 WL 626355, at *9 (E.D. Tex Jan. 30, 2018) ("The party seeking to strike an expert's testimony has the burden of proving that the report was 'ghost-written.'" (quotation omitted)); *see also Seitz*, 2008 WL 656513, at *2 ("[C]ourts conclude that as long as the substance of the opinions is from the expert, the attorney's involvement in the written expression of those opinions does not make them inadmissible.").

D

Finally, the court considers Hernandez's motion to exclude Dr. Linn's testimony.

1

Hernandez challenges Dr. Linn's expert testimony on three grounds: (1) Dr. Linn does not have an opinion regarding the cause of Hernandez's injuries and should therefore be excluded from offering testimony concerning causation at trial; (2) Dr. Linn is not qualified to provide opinions regarding whether the amounts charged for Hernandez's medical services were reasonable and necessary; and (3) Dr. Linn's counter-affidavit is unreliable because she did not prepare it. Groendyke responds that Dr. Linn is qualified to offer an opinion regarding the reasonableness of charges for the medical services Hernandez received because she is a board-certified neurologist and routinely bills for procedures and services similar to those Hernandez received. Groendyke also posits that Dr. Linn's counter-affidavit is reliable and that the use of a template affidavit does not render her opinion unreliable.

2

Groendyke does not dispute Hernandez's contention that Dr. Linn does not have an opinion regarding the cause of Hernandez's injuries. And Dr. Linn testified in her deposition that she is only giving her opinion as to whether the amounts charged for Hernandez's medical services were reasonable and necessary, not whether the accident caused his injuries. The court therefore holds that Dr. Linn's testimony is limited to whether Hernandez's medical charges were reasonable and necessary.

The court disagrees with Hernandez's assertion that Dr. Linn is not qualified to opine

regarding the reasonableness of Hernandez's medical expenses. Dr. Linn avers that she performs the same services and procedures that Hernandez received and, as a part of her medical practice as a board-certified neurologist, she routinely determines the reasonable charge for such services. As the court has already explained, *see supra* § IV(C)(2), these facts qualify Dr. Linn to testify about the reasonableness of Hernandez's medical bills.

The court also rejects Hernandez's argument that Dr. Linn's opinion regarding the reasonableness of Hernandez's medical expenses must be excluded because she did not author her counter-affidavit. The record reflects that although Dr. Linn works with MedCost Contain and relies on their billing data, she reviews the medical bills at issue and relies on her experience performing and billing these services to determine whether the charges are reasonable. As the court has already explained, *see supra* § IV(C)(2), this argument does not provide a basis to exclude Dr. Linn's testimony; rather, this argument goes to the weight and credibility that the jury should assign to Dr. Linn's testimony. *See, e.g.*, *Viterbo*, 826 F.2d at 422. If, in fact, Dr. Linn was merely acting as a mouthpiece for MedCost Contain or Groendyke, this will be revealed through vigorous cross-examination or the presentation of contrary evidence.

The court therefore denies Hernandez's motion to exclude Dr. Linn's testimony, but it limits her testimony to the reasonableness and necessity of Hernandez's medical bills.

E

In summary, the court denies Hernandez's motion to exclude the testimony of Van Cleave, Dr. Patel, and Dr. Linn, and it limits the testimony of Van Cleave and Dr. Linn as

set out in this memorandum opinion and order.

\* \* \*

Accordingly, the court grants in part and denies in part Groendyke's motion for summary judgment, and it denies Hernandez's motions to exclude except to the extent it limits the scope of the testimony of Van Cleave and Dr. Linn.

**SO ORDERED**.

July 21, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE